IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| REMY HOLDINGS INTERNATIONAL, LLC | ) ) ) | |
| Plaintiff/Counterclaim-defendant, | ) ) | Civil Action No. 5:19-cv-00021 |
| v. | ) ) ) | By: Elizabeth K. Dillon |
| FISHER AUTO PARTS, INC., | ) ) | United States District Judge |
| Defendant/Counterclaim-plaintiff. | ) | |

**MEMORANDUM OPINION**

Trial in this matter is currently scheduled to begin on February 28, 2022. Before the court is Fisher Auto Parts, Inc.'s second motion for partial summary judgment. (Dkt. No. 251.) The court heard argument on this motion on February 18, 2022. Fisher's motion will be granted.

I.  BACKGROUND

Plaintiff Remy Holdings International, LLC (Remy), a manufacturer and supplier of automotive parts and accessories, alleges two separate claims for breach of contract against defendant Fisher Auto Parts, Inc. (Fisher), an auto parts warehouse distributor. Remy alleges that Fisher wrongfully withheld payment of more than six million dollars pursuant to two types of contractual arrangements in the automotive aftermarket—the "core return" program and the "core devaluation credit" program. Remy also alleges that Fisher wrongfully terminated the parties' contracts. Finally, Remy brings alternative claims for unjust enrichment and conversion. (Second Am. Compl., Dkt. No. 47.) Fisher counterclaimed for breach of contract based on Remy's obligation to keep Fisher competitive in the marketplace and Remy's failure to compensate Fisher for excess core returns. (Second Am. Answer and Counterclaims, Dkt. Nos.

93, 283.)  Fisher has withdrawn its claim for damages relating to Fisher's alleged over-return of cores.  (Dkt. Nos. 277, 283.)

Previously, the court granted Fisher's motion for summary judgment on Remy's count two (breach of contract—wrongful termination of contract).  (Dkt. No. 249.)  The court also denied Remy's motion for summary judgment on its claim for failure to pay account balances (count one).  (*Id.*)

Later, by separate order, the court granted Fisher's motion for leave to file a second motion for partial summary judgment.  (Dkt. No. 250.)  In this motion, now before the court, Fisher moves for summary judgment on counts one (breach of contract—failure to pay account balances) and three (unjust enrichment) in Remy's Second Amended Complaint.  Fisher has not moved for judgment on Remy's fourth and final claim for conversion.

For more detailed explanations of the background of this case, interested readers are directed to the earlier opinions.  *See Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, 2019 WL 5295530 (W.D. Va. Oct. 18, 2019); 2022 WL 198851 (W.D. Va. Jan. 21, 2022); 2022 WL 193742 (W.D. Va. Jan. 21, 2022).  The court will address and highlight the facts that it finds most pertinent to Fisher's summary judgment motion when the court discusses Fisher's arguments and Remy's arguments in opposition.

II.  ANALYSIS

**A.  Summary Judgment**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law."  *Spriggs v. Diamond*

*Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), 56(e).  All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**B.  Breach of Contract**

Fisher argues that the court should grant summary judgment on Remy's remaining breach of contract claims because Remy committed the first material breach.  "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract.  If the initial breach is material, the other party to the contract is excused from performing his contractual obligations." *Horton v. Horton*, 487 S.E.2d 200, 204 (Va. 1997).  While this doctrine may sometimes result in seemingly harsh results, especially when parties continue to perform under the contract, Virginia law is clear in its application of the doctrine.

Fisher argues that, prior to any breach by Fisher, Remy failed to keep Fisher competitive in the marketplace in every way and failed to "provide competitive products to Fisher compared

to similar competitive products sold under the same market conditions" as required by the LOUs. Under the same first material breach doctrine, Fisher moves for summary judgment on Remy's claim for alleged breaches of the "Hoffman Acquisition" and "Core Base" Agreements. (Second Am. Compl. ¶ 39).[1] As the court observed in a previous opinion, these contracts "explicitly recognize" the 2015 LOU, stating that they are "concurrent" and that "together with the REMY USA Industries Letter of Understanding dated 1-21-2015 . . . constitutes the full and binding agreement between the parties." 2022 WL 193742, at *11.[2] Thus, the "keep competitive" language applies, and all of these claims by Remy rise or fall pursuant to the first material breach doctrine.

The court has already applied the first material breach doctrine to deny Remy's motion for summary judgment on this count of its complaint. *See* 2022 WL 193742, at *11 ("At minimum, there are issues of fact as to whether the breach was material. These fact issues preclude the entry of summary judgment for Remy."); Dkt. No. 249 at 23. Many of the same facts put forward by Fisher in support of its first motion for summary judgment, and in opposition to Remy's motion for summary judgment, are now brought to bear in support of Fisher's second motion for summary judgment with the burden now on Fisher. (*See, e.g.*, Dkt. No. 252, Statement of Material Facts (SUMF) ¶¶ 3–8, 12–21.) For example:

- Fisher began purchasing automotive products, including rotating-electrical products, from USA Industries in 1997. The last written agreement between Fisher and USA was entered into in 2012 (the 2012 LOU). The 2012 LOU included an express provision that stated, "[t]his letter of understanding is predicated upon USA keeping Fisher competitive in the marketplace." (SUMF ¶ 3.)

---

[1] In previous opinions, the court has referred to these contracts as the KOI Contract and the Hoffman Contract. *See* 2022 WL 193742, at *11.

[2] "In Virginia, if parties have entered into multiple documents relating to a business transaction, a court must construe the documents together to determine the parties' intent." *Virginia Elec. & Power Co. v. Bransen Energy, Inc.*, 850 F.3d 645, 654 (4th Cir. 2017).

- In 2014, Remy acquired USA.  Fisher continued the relationship with Remy.  (*Id.* ¶ 5.)

- In January 2015, Fisher and Remy negotiated and signed a contract entitled the First Amendment to the Letter of Understanding (the 2015 LOU).  The 2015 LOU included a provision that stated, "[t]his letter of understanding is predicated upon REMY keeping Fisher competitive in the marketplace in every way."  (*Id.* ¶ 6.)

- Unlike the 2012 LOU, the 2015 LOU that Remy and Fisher negotiated included a termination provision:

    > Remy shall take best efforts to ensure that Remy provides competitive products to Fisher compared to similar competitive products sold under the same market conditions and if this doesn't occur in Fisher's opinion then Fisher can change suppliers and end this contract with as little as 60 days of advance notice; in such case Fisher shall not owe REMY any additional monies (except for payment for products ordered prior to the date of termination and the pro rata amounts listed below).

    (*Id.* ¶ 7.)[3]

- Remy's performance began to decline precipitously in 2017, which included a failure to timely fill Fisher's purchase orders.  (*Id.* ¶ 9; *see also id.* ¶¶ 10–21.)

- Based on Fisher's ongoing assessment of Remy's performance, including Remy's inadequate efforts to keep Fisher "competitive in the marketplace in every way" and to "provide competitive products to Fisher compared to similar competitive products sold under the same market conditions," Fisher exercised its termination right set forth in the 2015 LOU and the 2016 LOU.  (*Id.* ¶ 22.)

Fisher exercised its right to terminate, included in the 2015 and 2016 LOU, by notice dated June 18, 2018, and it stopped returning cores to Remy on July 1, 2018.  At the hearing, Remy stated that Fisher's first breach occurred on July 1, 2018, and the court will assume that to be true for purposes of this motion.

---

[3] A letter of understanding executed in May 2016 (2016 LOU) contained provisions that are identical in all material respects.  (SUMF ¶ 8.)

The record abounds with undisputed facts and admissions by Remy, some outlined in the court's previous opinion and some summarized in the briefs of the parties, regarding Remy's poor performance.  To avoid these undisputed facts and admissions, Remy argues that there was no breach of contract by asking the court to separately consider the APSG term sheet (regarding order fill rates and discounts) from the LOUs and by concentrating on an irrelevant "most favored nation" LOU provision.[4]

Remy points to the APSG Agreement, under which Remy was obligated to meet a 93% order fill requirement within thirty days or pay Fisher a 5% penalty upon written request.  Thus, Remy argues that Fisher's argument fails because Fisher did not submit evidence that Remy failed to pay demanded order fill penalties.  Remy did pay order fill penalties when requested unless waived by Fisher.  Thus, Remy argues, it did not breach the "keep competitive" clause in the LOUs because fill rates were governed by the APSG agreement.

Remy's arguments are contrary to its concession that its theory of the case relies on the LOUs between the parties, not the APSG term sheet.  The court granted Fisher leave to file this second summary judgment motion based on Remy's change in legal theories from a "one-for-one core return claim under the [APSG] term sheet to an inventory-purchase claim rooted in the parties' direct contracts."  (Dkt. No. 250 at 2.)  Remy is now trying to change legal theories once again to avoid the entry of summary judgment.  Moreover, Remy did not contest the material facts set forth in Fisher's first motion for summary judgment, which the court has granted.  (Dkt.

---

[4] The court will not discuss or further analyze the most favored nation provision because it is not at issue. The relevant inquiry under the LOUs is whether Remy's performance issues failed to keep Fisher competitive in the marketplace in every way, not whether Remy treated Fisher worse than Remy's other customers.  Under Remy's interpretation, the keep competitive clause would be rendered meaningless. *See Dairy Energy, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, Civil Action No. 4:20cv0068, 2021 WL 4620905, at *6 (W.D. Va. Oct. 7, 2021) ("Contracts are presumed not to use superfluous terms.").

Nos. 140, 187, 249.) These are the same facts that Fisher now relies upon in support of its second motion for partial summary judgment. Remy cannot evade summary judgment by contesting facts it previously conceded as true and conveniently switching theories when it suits them. *Guinness PLC v. Ward*, 955 F.2d 875, 899 (4th Cir. 1992) (stating that judicial estoppel prevents parties from "playing fast and loose and blowing hot and cold with the judicial process to such a degree as to violate the essential integrity of that process").

Furthermore, the fill rate was one part of the equation to keep Fisher competitive. (*See* SUMF ¶ 18 (explaining that "[b]eyond timely shipping orders, Remy's obligation to keep Fisher competitive also required Remy to provide Fisher with, among other things, competitive pricing, good customer service, a broad product line, and high-quality products"); 20 (noting that Remy "removed certain items from its product line" and "Remy did not want to have a shortened product line because 'it impacts [Remy's] order fill' and threatened a 'potential loss of the customer'") (internal citations omitted).) The court cannot sever it from the whole.

Remy breached the contract prior to July 1, 2018.[5] Given Remy's admitted performance issues, including but not limited to order fill rates, Remy breached the contract prior to June 18, 2018, by failing to keep Fisher competitive in the marketplace. This breach was material because it "defeats an essential purpose of the contract." *Horton*, 487 S.E.2d at 204. As Remy's former President, David Nichols, testified, "Remy knew that keeping Fisher competitive in the marketplace in every way was an essential purpose of the parties' agreement." (SUMF ¶ 10.) Because of this first material breach, Remy is precluded from proceeding against Fisher for

---

[5] It is a question of fact for the jury to determine when this breach by Remy occurred, and, of course, any damages that flowed from the breach, considering any affirmative defenses regarding damages. The court notes that initial failures to abide by a specific order fill percentage, when the stated penalty is paid, is likely insufficient to cause, on its own, a party to cease being competitive in the marketplace.

breach of contract. *See W.C. English, Inc. v. Rummel, Klepper & Kahl, LLP*, Case No. 6:17-cv-00018, 2021 WL 4782274, at *5 (W.D. Va. Oct. 13, 2021) ("[U]nder Virginia law, the party who commits the first material breach of a contract is not entitled to sue to enforce its terms."); *Cars Unlimited II, Inc. v. Nat'l Motor Co. Inc.*, Civil Action No. 2:06cv305, 2007 WL 234490, at *5 (E.D. Va. Aug. 15, 2007) (stating that a material breach "prevents the breaching party from enforcing the contract" in Virginia).

Remy then argues that if it committed a first material breach, Fisher waived the defense by continuing to order products from Remy. Remy cites *Va. Polytechnic Inst. & State Univ. v. Interactive Return Serv.* in support of its waiver argument, but in that case the court found that the trial evidence failed to establish a material breach by the IRS, so the first material breach defense did not apply. 595 S.E.2d 1, 7 (Va. 2004). It also relies upon *Am. Chlorophyll v. Schertz* for the proposition that "[a] defendant may not keep the contract alive for his own benefit, claiming the royalties thereunder, and at the same time excuse his default by averring that the contract was at an end. He may not in the same breath affirm and disaffirm." 11 S.E.2d 625, 628 (Va. 1940). However, *Am. Chlorophyll* appears to have been implicitly abrogated or overruled. *See Tandberg, Inc. v. Advanced Media Design, Inc.*, Civil Action No. 1:09cv863, 2009 WL 4067717, at *4 (E.D. Va. Nov. 23, 2009) ("[G]iven the fact that *American Chlorophyll* has not been applied since 1940, and the fact that *Countryside* and *Horton* appear to implicitly abrogate, if not overrule, *American Chlorophyll*, it is appropriate to apply the first material breach rule here.").

Virginia courts have rejected the argument that a party waives this defense by continuing to perform after the initial material breach. *See Countryside Orthopaedics, P.C. v. Peyton*, 541 S.E.2d 279 (Va. 2001); *Horton, supra*. In *Horton*, for example, the court rejected defendant's

8

argument that the plaintiff "accepted her performance of signing 'form' deeds, and thus waived his right to assert her failure to sign the power of attorney as a defense to his nonperformance." 487 S.E.2d at 204.  The court reasoned that "Mr. Horton did not intend to relinquish his contractual right to secure a power of attorney from Mrs. Horton.  As stated above, before each settlement, Mr. Horton requested that Mrs. Horton sign the power of attorney as required by the 1991 contract.  These repeated requests establish that Mr. Horton did not waive his right to assert Mrs. Horton's failure to sign the power of attorney as an excuse for his nonperformance." *Id.* at 205.  Fisher likewise often complained to Remy in 2017 and 2018 about Remy's poor performance, and Remy knew that its poor performance put its relationship with Fisher in jeopardy.  (*See* SUMF ¶¶ 15, 17, 19.)  Therefore, the court finds that Fisher did not waive its first material breach defense.

For these reasons, the court will grant Fisher's motion for summary judgment on count one of Remy's Second Amended Complaint.

**C. Unjust Enrichment**

Fisher also moves for summary judgment on Remy's claim for unjust enrichment due to the existence of an express contract between the parties.  "Unjust enrichment is an implied contract action based upon the principle that one person may not enrich himself unjustly at the expense of another.  The existence of an express contract covering the same subject matter of the parties' dispute precludes a claim for unjust enrichment." *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018).  Remy has not contested Fisher's motion for summary judgment on this claim and conceded at the hearing that this claim cannot be sustained in light of the parties' express contractual arrangement.  The court will therefore grant Fisher's motion on Remy's unjust enrichment claim.

9

## III.  CONCLUSION

For the foregoing reasons, the court will enter an appropriate order granting Fisher's second motion for partial summary judgment.

Entered: February 25, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge