IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| REMY HOLDINGS INTERNATIONAL, LLC | ) ) ) |
| Plaintiff/Counterclaim-defendant, | ) ) Civil Action No. 5:19-cv-00021 |
| v. | ) ) ) By: Elizabeth K. Dillon |
| FISHER AUTO PARTS, INC., | ) United States District Judge ) |
| Defendant/Counterclaim-plaintiff. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the court are omnibus motions in limine (Dkt. Nos. 230, 232) filed by Remy Holdings International, LLC ("Remy") and Fisher Auto Parts, Inc. ("Fisher"). The court heard argument on these motions on February 18, 2022, and ruled on many of the issues at the hearing. Additionally, the parties agreed as to the disposition of some of the issues, so some of the matters are moot. Trial is scheduled to begin on February 28, 2022. Should the evidence at trial dictate that the matters below are properly admissible or inadmissible, the parties may ask for reconsideration of the rulings.

I. BACKGROUND

For detailed explanations of the background of this case, interested readers are directed to the following opinions. *See Remy Holdings Int'l, LLC v. Fisher Auto Parts, Inc.*, 2019 WL 5295530 (W.D. Va. Oct. 18, 2019); 2022 WL 198851 (W.D. Va. Jan. 21, 2022); 2022 WL 193742 (W.D. Va. Jan. 21, 2022).

The only claims that remain for trial are Remy's claim for conversion of cores (with regard to liability and damages) and Fisher's claim for breach of contract for Remy's failure to

keep it competitive (with regard to timing of this breach and damages).

## II.  ANALYSIS

### A.  Remy's Motions in Limine

#### 1.  Remy ownership

Remy moves to preclude Fisher from introducing evidence that Remy is no longer an active remanufacturer and is owned by a private equity firm, Torque Capital. Remy argues that this evidence is not relevant because it does not relate to the contractual relationship between Fisher and Remy, the ownership of cores, or order fill rates. Fisher argues that this motion should be denied because Remy's historical and present ownership is relevant to Fisher's counterclaim and defenses, and Remy should not be able to mislead the jury about its present commercial status.

Remy's ownership is relevant because Remy was sold several times during the Fisher relationship and the constant transitions are relevant to impaired performance and ability to keep Fisher competitive. Ownership is also relevant to witness bias. "To be admissible, evidence must be relevant—a low barrier requiring only that evidence be worth consideration by the jury." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 349 (4th Cir. 2014).

Fisher does not intend to argue, as Remy is concerned, that Remy is "no longer invested" in the industry or "does not need the money to continue operating." Therefore, Remy's motion will be denied, except that the terms private equity firm or venture capital should not be mentioned. Thus, as to this part, the motion is granted in part and denied in part.

#### 2.  Other contracts

Remy argues that evidence of its contractual relationships other than with Fisher should be excluded. Remy maintains that there no relevance to the manner in which Remy operated in

other business endeavors. *See, e.g*, *United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 37 (D.D.C. 2012) (finding that documents "relating to other contracts or other parties are not facially relevant to the case"). Fisher argues that the motion should be denied because Remy has taken a contrary position throughout the case and Remy's contracts with other customers reveal relevant information.

Both parties have referenced other contractual relationships during this litigation and rely, in part, on industry standards. Thus, information regarding Remy's third-party contracts may be relevant evidence. *See Copeland Corp. v. Choice Fabricators, Inc.*, 2007 WL 9717680, at *2 (S.D. Ohio Apr. 6, 2007) (stating that a "party's business transactions with third parties in similar circumstances may be relevant to prove the probable terms or meaning of terms of a disputed agreement"). For example, some of Remy's contracts with other customers show that Remy bought core inventories in written agreements signed by both parties. Thus, the lack of such an agreement may be probative of whether Remy owned Fisher's core inventory.

Thus, the court denies this part of Remy's motion with the understanding that the admission of this type of evidence will depend on the particular contract and its relevance.

### 3. Counterclaim damages

With respect to Fisher's counterclaims, Fisher retained Harold Martin to calculate damages based on Remy's failure to reach a 100% fill rate, but Remy argues that Fisher should be precluded from arguing for damages based on more than a 90% fill rate. Remy also argues that Fisher cannot recover any damages for lost sales because Remy paid $200,000 in order fill discounts consistent with the terms of the APSG Program. Finally, Remy argues Fisher failed to mitigate its damages because it did not invoke the 60-day termination period under the Keep Competitive Clause until 18 months after Remy's performance issues began.

Fisher argues, and the court agrees, that Remy's motion is a procedurally improper attempt to limit Remy's damages. These arguments should have been raised in a dispositive motion, not a motion in limine. "Where a motion seeks to limit damages . . . it must be treated as a motion for partial summary judgment." *Fed. Ins. Co. v. Mertz*, 12-cv-1597-NSR-JCM, 2016 WL 1572995, at *1 (S.D.N.Y. 2016). Where, for example, a motion in limine seeks to "limit the damages that plaintiff may recover" for the "failure to mitigate damages," courts decline the invitation to resolve those contentions because "motions in limine are not proper procedural devices for the wholesale disposition of theories or defenses." *Bell v. Prefix, Inc.*, No. 05-74311, 2009 WL 3614353, at *1, 3 (E.D. Mich. Nov. 2, 2009); *see also MVP v. 5.88 Acres (Flora)*, Civil Action No. 7:19-cv-00225, 2021 WL 1235377, at *8 (W.D. Va. Mar. 31, 2021) (declining invitation to rule as a matter of law that "the two parcels be considered together under the larger parcel doctrine" because "this is a motion in limine and not a motion for summary judgment").

The court denies this part of Remy's motion as procedurally improper and makes no ruling as to the admissibility of the evidence.

### 4. Accounting audits

Finally, Remy seeks to exclude a Remy PowerPoint presentation that discussed the results of Remy's annual audit of its business practices that found a "material weakness" regarding the timing of core reconciliation. (Ex. 8, Dkt. No. 237-8.) Remy argues that this evidence is inadmissible because it requires expert testimony to explain to the jury. Remy also argues that the evidence is not material because there is no evidence connecting the audits to any issue in this case in relation to Fisher. Finally, Remy argues that admission of the audit would be unduly prejudicial.

Fisher counters that the document is relevant because Remy's reconciliation practices are a central issue. Fisher used the document as an exhibit during depositions because it identifies the following weakness in Remy's business operations: "Reconciliations not performed in accordance with customer contracts." (Ex. 8 at 9.) Fisher maintains that Remy did not conduct regular core reconciliations with Fisher, and the PowerPoint commentary tends to prove that fact. *See* Fed. R. Evid. 401.

The court finds that this financial audit evidence requires expert testimony and that terms like "material weakness" are terms of art in auditing. Therefore, the court grants this portion of Remy's motion in limine.

## B.  Fisher's Motions in Limine

### 1.  Unrelated Fisher shareholder litigation

Fisher moves to exclude argument, evidence, testimony, and opinions about unrelated Fisher shareholder litigation. As discussed at the hearing, the parties agree that the shareholder litigation is irrelevant except to the extent Martin may be questioned regarding his retention in outside litigation and any bias on his part. Thus, this part of the motion is dismissed as moot.

### 2.  Separate Remy lawsuit against MPA

Fisher moves to exclude evidence, testimony, and opinions about a separate lawsuit brought by Remy in state court against MPA in early 2021. As discussed at the hearing, the parties agree that this evidence is irrelevant (noting that this agreement does not cover the sales agreement between MPA and Fisher). Thus, this part of the motion is dismissed as moot.

3. **Fisher's companywide profitability or financial performance, aggregate rotating-electrical sales**

Fisher moves to exclude argument, evidence, testimony, and opinions about Fisher's companywide profitability or financial performance, as well as Fisher's aggregate rotating-electrical sales. As discussed at the hearing, the parties agree that this evidence will not be offered. Thus, this part of the motion is dismissed as moot.

4. **Remy currently manufactures automotive parts or maintains operations in the North American automotive aftermarket**

Fisher moves to exclude argument, evidence, testimony, and opinions that state, suggest, or imply that Remy currently manufactures automotive parts or maintains operations in the North American automotive aftermarket. As discussed at the hearing, the parties agree that this evidence will not be offered. Thus, this part of the motion is dismissed as moot.

5. **Fisher's relationship with USA Industries**

Fisher moves to exclude argument, evidence, testimony, or opinions from Remy witnesses about Fisher's relationship with USA Industries that are based on hearsay or for which those witnesses lack personal knowledge. Fisher argues that such evidence is not based on personal knowledge but is hearsay. *See* Fed. R. Evid. 602, 801, 802.

As discussed at the hearing, the court appreciates the parties' advising the court of evidentiary issues that may arise at trial, but this motion merely asks the court to apply the Federal Rules of Evidence, which the court intends to do. Thus, this part of the motion is dismissed as moot.

6. **Confirmation that Frank Doria's statements about Fisher are party admissions**

Rule 801(d)(2)(D) provides that a statement is not hearsay if it is offered against a party and the statement was "made by the party's agent or employee on a matter within the scope of

that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Under this Rule, "an employee's statement can be used against the employer as an admission so long as it is made during the existence of the relationship and concerns a matter within his agency or employment." *Lewis v. CSX Transp., Inc.*, 202 F.R.D. 464, 466 (W.D. Va. 2001).

Frank Doria directly managed and oversaw the Fisher account at USA, where he was the Senior Vice President of Sales and Marketing. After Remy bought USA, Doria took on a similar role and continued to manage the relationship as Remy's employee and agent. Fisher asks the court to confirm that while he worked at Remy between 2014 and 2018 as Remy's employee and/or agent, Mr. Doria's statements about Fisher's business relationship with USA and Remy are party admissions and not hearsay.

Remy argues that Doria is not and was not an agent or employee of Remy for any time throughout this litigation. Remy claims that there is no evidence from Doria that was made during his employment with either USA or Remy. Remy asserts that Fisher is trying to use Doria, a disgruntled former employee of the predecessor-in-interest of Remy, to support Fisher's uncovering of the USA Core Policy.

As discussed at the hearing, the court appreciates the parties' advising the court of evidentiary issues that may arise at trial, but this motion merely asks the court to apply the Federal Rules of Evidence, which the court intends to do. The court cannot make a blanket ruling on whether Doria's statements are party admissions prior to trial without knowing the foundation for such testimony. Thus, this part of the motion is denied without prejudice to the issue being revisited at trial.

7. **Confirm that the factfinder may consider parol evidence when interpreting "core devaluation" and related terms in the parties' contracts**

The meaning of the contractual term "core devaluation" varies. Despite its position in the briefing, at the hearing Remy agreed that parol evidence is admissible in the consideration of the meaning of the term "core devaluation". Given this agreement, the part of the motion regarding "core devaluation" is dismissed as moot. Because "related terms" are too vague, the court makes no ruling in that regard and denies that portion of the motion.

8. **Fisher's tax practices**

Remy deposed Fisher's former Chief Financial Officer, Joe Vaughn, about Fisher's accounting records. During that deposition, Remy's counsel asked Vaughn about Fisher's tax liability and tax strategy, including whether Fisher sought to limit the taxes that Fisher paid on cores. Fisher argues that the court should preclude any statement, suggestion, or implication that Fisher tried to evade taxes or committed any wrongdoing with respect to its tax practices. Fisher argues that this evidence is irrelevant and would cause unfair prejudice. Fed. R. Evid. 402, 403.

As discussed at the hearing, the parties agree that this evidence will not be offered. The court understands that this agreement is not so broad as to include evidence regarding accounting documents and discrepancies in the same. With this understanding, this part of the motion is dismissed as moot.

9. **Remy's reconciliation practices**

Fisher argues that the court should exclude from trial any evidence, testimony, and opinions about Remy's reconciliation practices that are based on inadmissible hearsay. As discussed at the hearing, the court appreciates the parties' advising the court of evidentiary issues

that may arise at trial, but this motion merely asks the court to apply the Federal Rules of Evidence, which the court intends to do.  Thus, this part of the motion is dismissed as moot.

### 10. Remy's damages for its conversion claim that are not tied to the market value of rotating-electrical cores

Fisher argues that Remy expert Dana Trexler did not disclose an opinion about the market value of rotating-electrical cores.  *See Desalle v. TitleMax of Virginia, Inc.*, Civil Action No. 3:14CV834-HEH, 2014 WL 12771139, at *2 (E.D. Va. Dec. 23, 2014) ("The measure of damages in a conversion action is the market value of the property at the time of conversion.").  Trexler did not define the market value of cores, explain how that value is calculated, or provide the basis for her understanding of the market value of rotating-electrical cores.  Ms. Trexler only stated: "In the event that the Court determines that Remy owned the Cores and the remedy to which Remy is entitled under the conversion claim, then it is my opinion that the amount attributed to the converted Cores is $6,904,039, the amount determined by Fisher in the reconciliation it performed for MPA." (Dkt. No. 169-2 at ¶ 69.)  Accordingly, Ms. Trexler was focused on the specific core reconciliation between Fisher and MPA, not the general market value of rotating-electrical cores.  This statement makes clear that Ms. Trexler did not make a market value determination, and any subsequent attempt to do so would be untimely.  *See* Fed. R. Civ. P. 26(a), (e) (time to disclose damage computations and expert reports); *Muhs v. River Rats, Inc.*, Civil Action No. CV207-077, 2008 WL 9351760, at *1 (S.D. Ga. Oct. 7, 2008) (granting motion in limine that sought to "exclude the opinions of David Cole that were not disclosed in the expert report").

Remy states that it does not intend to elicit opinions that are not included within its expert reports.  Remy, thus, appears to concede that Trexler should not be allowed to testify as to the

9

market value of the cores. Thus, it appears that the parties agree that Remy may not offer expert witness opinions that were not timely disclosed.

Remy does, however, intend to introduce market value evidence at the precise moment of conversion. Remy states that it will rely upon its accounting records, which were created by Remy employees following its acquisition of USA Industries and market value evidence as demonstrated at the exact moment that Fisher and Motorcar Parts of America, Inc. (MPA), conspired to convert Remy's cores. Remy alleges that the conversion occurred in or around mid-August 2018, when Fisher stores and distribution centers across the country performed a simultaneous "re-boxing" in connection with the changeover to MPA.

Related to this motion, at the hearing, the parties raised the issue of the standard for the measure of damages in a conversion action. The court requested, and recently received, further briefing on the issue. The parties agree that the "measure of damages" for conversion is the market value of the property converted "at the time and the place of conversion." *Straley v. Fisher*, 10 S.E.2d 551, 553 (Va. 1940). The parties disagree as to the proper jury instruction regarding conversion damages and the proper market to consider.

The court will await the development of evidence at trial to resolve the issue of correct jury instructions. As to this part of the motion in limine, the parties agree that no expert witness testimony will be elicited that has not been timely disclosed, so the court will dismiss that portion of the motion as moot. The part of the motion regarding remaining issues about conversion damages is denied without prejudice to the issue being revisited at trial.

**11. Inflammatory language like "steal," "stolen," "thief," or "theft"**

Fisher argues that the court should exclude evidence, argument, testimony, and opinions that use inflammatory language like "steal," "stolen," "thief," or "theft" to state, suggest, or

imply that Fisher committed criminal wrongdoing. As discussed at the hearing, the parties agree that this evidence will not be offered. Thus, this part of the motion is dismissed as moot.

### 12. Industry standards or practices associated with alleged core-repayment obligations during supplier changeovers

Fisher seeks to exclude evidence, argument, testimony, and opinions about purported industry standards or practices associated with alleged core-repayment obligations during supplier changeovers. Fisher argues that industry practices are irrelevant because Remy contends that Fisher's contracts with USA and Remy specifically govern ownership of Fisher's core inventory. This is different from Remy's initial position which was focused on standard or typical industry practices associated with alleged core-repayment obligations during a distributor's changeover to a new supplier. Fisher specifically cites the Fisher/MPA Supply Agreement as evidence it seeks to exclude with this motion. (Dkt. No. 172-43.)

Remy argues that it did not change positions or introduce new theories. Remy persists that it intends to elicit expert testimony regarding the manner such transactions occur in the industry. Those transactions are consistent with the way in which Fisher and MPA conducted the transaction that led to this lawsuit.

The court must await evidence at trial to determine whether industry standards or practices associated with alleged core-repayment obligations during supplier changeovers is relevant and/or otherwise admissible. Thus, this part of the motion is denied without prejudice.

### 13. Admissibility of APSG Term Sheet

Fisher withdraws this part of its motion.

## III. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED as follows:

1. Remy's omnibus motion in limine (Dkt. No. 230) is GRANTED IN PART and DENIED IN PART with respect to part one; DENIED WITHOUT PREJUDICE with respect to part two; DENIED WITHOUT PREJUDICE with respect to part three; and GRANTED as to part four.

2. Fisher's omnibus motion in limine (Dkt. No. 232) is DISMISSED AS MOOT with respect to parts one, two, three, four, five, eight, nine, a portion of ten, eleven, and thirteen; DENIED as to part six; DISMISSED AS MOOT IN PART and DENIED IN PART as to part seven; DENIED WITHOUT PREJUDICE IN PART as to a portion of part ten; and DENIED WITHOUT PREJUDICE as to part twelve.

Entered: February 25, 2022.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge